IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BENNIE SMITH and DORIS SMITH                                              PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:11-CV-00135-GHD-SAA

KOHLER COMPANY and UNICARE
LIFE AND HEALTH INSURANCE CO.                                             DEFENDANTS

MEMORANDUM OPINION RULING ON MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court in the case *sub judice* are the following: a motion for summary judgment [36] filed by Defendant Kohler Company ("Kohler"); a motion for summary judgment [39] filed by Defendant UniCare Life and Health Insurance Co. ("UniCare"); a motion for summary judgment [41] filed by Plaintiffs Bennie Smith and Doris Smith ("Plaintiffs"); and a motion for continuance of trial setting and pending deadlines [63] filed jointly by all parties. Upon due consideration, the Court finds that Defendants' motions for summary judgment [36 and 39] are well taken and should be granted; Plaintiffs' motion for summary judgment [41] is not well taken and should be denied; and the parties' joint motion for continuance of trial setting and pending deadlines [63] should be denied as moot.

*A. Factual and Procedural Background*

This ERISA case presents a claim for benefits by Plaintiffs, who are the sole beneficiaries of their deceased son's basic life, supplemental life, and accidental death and dismemberment insurance through his former employer, Kohler. Plaintiffs' deceased son, Jason Lynn Smith ("Decedent") had coverage under Kohler's group plan through UniCare which provided basic life, supplemental life, and accidental death and dismemberment benefits. Plaintiffs' amended complaint alleges that Defendants wrongfully denied supplemental life insurance benefits at the

1

$100,000 level and accidental death and dismemberment benefits at the $100,000 level and failed to advise Plaintiffs on the procedure for appealing the denial of benefits. Plaintiffs aver in the amended complaint that Defendants' alleged actions constitute "a breach of contract and violations of [Defendants'] obligations under ERISA and state[-]law contractual obligations," "a breach of fiduciary duty," and an "arbitrary and capricious" decision that was "subject to a serious conflict of interest." Pls.' Am. Compl. [4] ¶ 7. Plaintiffs further allege in the amended complaint that Defendants "should be equitably estopped from denying the benefits" to Plaintiffs. *Id.*

After answering the amended complaint, Defendants each filed motions for summary judgment, and Plaintiffs filed a cross-motion for summary judgment. Plaintiffs' motion for summary judgment solely addresses its wrongful denial of benefits claim under Section 502(a)(1) of ERISA.

Under the terms of the plan in question (the "Plan"), Decedent was automatically entitled to a benefit of $10,000 basic life insurance coverage. AR 00230. Decedent had the option to purchase supplemental life insurance coverage and accidental death and dismemberment coverage in the amount of $25,000, $50,000, or $100,000. AR 00228. Decedent's accidental death and dismemberment benefits could not exceed the amount of his basic and supplemental life insurance. AR 00053, 00231. Under the terms of the Plan, in the event of Decedent's death, the Plan would pay his named beneficiaries the amount of the employee's basic coverage in addition to the amount of any supplemental coverage. *Id.*

Plaintiffs allege that they are entitled to $100,000 in supplemental life insurance coverage and $100,000 in accidental death and dismemberment insurance coverage, and thus that although

they have received benefits of $10,000 for basic life, $25,000 for supplemental life, and $25,000 for accidental death and dismemberment (a total of $60,000 in benefits), that they are entitled to an additional $75,000 in supplemental life benefits and an additional $75,000 in accidental death and dismemberment benefits (a total of $150,000 in claimed benefits). Defendants contend that at the time of Decedent's death, Decedent had not presented evidence of insurability, and thus that Plaintiffs are not entitled to benefits at the $100,000 level on either supplemental life insurance or accidental death and dismemberment insurance. Plaintiffs argue in response that Decedent was never notified of the need to submit evidence of insurability to obtain the higher level of coverage and that the confirmation of his election to receive higher coverage constitutes a notice that the higher coverage was in effect at the time of Decedent's death.

According to the administrative record, Decedent elected to receive no supplemental life insurance benefits and no accidental death and dismemberment insurance benefits from March 17, 2008 until December 31, 2008. AR 00017. Subsequently, during Decedent's open enrollment season at Kohler in October of 2008, the record indicates that Decedent elected to enroll for $100,000 supplemental life insurance coverage and $100,000 accidental death and dismemberment coverage. AR 00075–00077. Decedent listed the Plaintiffs as beneficiaries of the benefits he was entitled to under these applicable insurance plans. AR 00018. The record indicates that upon submitting his open season enrollment, Decedent received an on-screen open enrollment confirmation of his decision to increase his supplemental life insurance coverage to $100,000 and his accidental death and dismemberment insurance coverage to $100,000. AR 00081–00082. The confirmation indicated the annual contribution by Kohler and Decedent's projected per-payday paycheck deduction amount reflecting Decedent's $100,000 coverage on both policies, but the on-screen confirmation also noted that any change in benefits would not

become effective until January 1, 2009, and that Decedent would be able to make changes to his plan elections during open season or after open season had ended. *Id.* Defendants maintain that employees who receive open enrollment confirmations also receive an on-screen notice if evidence of insurability is required to obtain a higher level of coverage. Plaintiffs dispute whether Decedent ever received such an on-screen notice. Included in the record is a screen capture of an open enrollment notice stating as follows:

> Open Enrollment
>
> Evidence of Insurability
>
> The life insurance vendor requires a signed copy of the form you have just completed. You will receive this form in the mail[;] please sign and return this form to Kohler Konnect (a self-addressed envelope will be provided). At this time, you will be automatically enrolled in the highest level of coverage available which does not require evidence of insurability[;] this amount will be on your confirmation statement.
>
> Upon receipt of your signed form, Kohler Konnect will forward the form to the life insurance vendor who will either approve or deny your request for $100,000.00 in life insurance coverage. If approved, Kohler Konnect will enroll you in this amount of life insurance as you had originally requested. If denied, your coverage will remain the same as the amount shown on your confirmation statement.

AR 00074. Decedent died on July 23, 2009 after suffering a fall. AR 00005.

By a letter dated August 3, 2009, Kohler wrote to Plaintiffs estimating Decedent's benefits under their group plan as follows: $10,000 in basic life insurance coverage, $25,000 in supplemental life insurance coverage, and $25,000 in accidental death and dismemberment insurance coverage. By a letter dated November 3, 2009, Plaintiff Doris Smith wrote to Kohler that its benefits estimation was incorrect because Decedent had received the open enrollment confirmation providing that he had $100,000 in supplemental life insurance coverage and

$100,000 in accidental death and dismemberment insurance coverage. AR 00083. By a letter dated December 2, 2009, Kohler wrote to Plaintiffs:

> After further review, it has been determined that the [s]upplemental [l]ife [i]nsurance benefit will remain at the $25,000 level. This determination was made based on the following:
>
> • The copy of the self-serve open enrollment confirmation statement which did not include the additional pages that indicated that the [e]vidence of [i]nsurability form had to be completed, signed[,] and returned to [Kohler] before the coverage level of $100,000 would go into effect;
> • The lack of receipt of such [e]vidence of [i]nsurability within the timeframe from 10/30/2006 to 7/16/2009; and
> • The premiums that were deducted from [Decedent]'s pay from 11/1/2009 to 7/16/2009 which were for $25,000 of [s]upplemental [l]ife [i]nsurance coverage.

AR 00153. Kohler also stated that upon receipt of Decedent's death certificate Kohler would file death claims for a $10,000 basic life benefit, a $25,000 supplemental life benefit, and a $25,000 accidental death and dismemberment benefit. *Id.* On December 3, 2009, Kohler submitted a group policyholder statement to UniCare stating that Decedent had died on July 23, 2009, and that the amounts of insurance to be paid out were $10,000 for basic life, $25,000 for supplemental life, and $25,000 for accidental death and dismemberment insurance. AR 00006.

On or about December 15, 2009, UniCare issued checks to the Plaintiffs for a total of $25,000 for supplemental life insurance. Plaintiffs cashed these checks in December of 2009. On or about January 6, 2010, UniCare issued checks to the Plaintiffs for a total of $25,000 for accidental death and dismemberment insurance coverage. Plaintiffs cashed these checks in January of 2010.

## B. Summary Judgment Standard

Standard summary judgment rules control in ERISA cases. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

## C. Discussion and Analysis

Plaintiffs allege that Defendants' denial of entitlement to benefits at the $100,000 level of coverage for supplemental life insurance benefits and accidental death and dismemberment benefits was an arbitrary and capricious decision that should be reversed by this Court pursuant

to Section 502(a)(1) of ERISA. Defendants argue that Plaintiffs' claims should be dismissed because the plan administrator's decision was neither arbitrary nor capricious and was instead supported by substantial evidence.

ERISA confers jurisdiction on federal courts to review benefit determinations by fiduciaries or plan administrators. *See* 29 U.S.C. § 1132(a)(1)(B). The Fifth Circuit has stated that "[o]ur cases . . . make clear that 'when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion.' " *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc)); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). This deferential standard is recognized by the subject Plan, which provides that the "[p]lan [a]dministrator [Kohler] has the exclusive right to determine eligibility for benefits and to interpret provisions of the plan so the decision by the [p]lan [a]dministrator [Kohler] shall be conclusive and binding." AR 00209.

Courts in the Fifth Circuit apply a two-step process when evaluating a plan administrator's denial of benefits under the abuse of discretion standard. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). First, a court must determine whether the plan administrator's interpretation and application of the plan is legally correct. *Id.* If so, the inquiry ends and there is no abuse of discretion. *Id.* Alternatively, if the court finds the plan administrator's interpretation was legally incorrect, the court must then determine whether the plan administrator's decision was an abuse of discretion. *Id.; Aboul–Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001). A denial of benefits is not an abuse of discretion if it "is supported by substantial evidence and is not arbitrary and capricious." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). This Court is of the

opinion that this case is one in which the plan administrator's decision was legally correct based on the language of the Plan, and thus that the Court need not engage in an abuse of discretion analysis.[1]

In evaluating the record to determine whether the interpretation of a plan is "legally correct," we consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). "[W]hether the administrator gave the plan a fair reading is the most important factor." *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009); *see also Crowell*, 541 F.3d at 313. An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the "plain meaning of the plan language." *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998); *see also Stone*, 570 F.3d at 260.

The record in the case *sub judice* indicates that Kohler properly focused on giving the Plan a uniform construction and considered that the interpretation urged by the Plaintiffs would result in unanticipated costs. The record further indicates that Kohler's decision to deny

---

[1] The Court notes that Plaintiffs maintain that Kohler, as Decedent's employer, plan administrator, and plan sponsor, was operating under a conflict of interest which must be weighed as a factor in determining whether there is an abuse of discretion. Because the Court finds that the plan administrator's decision was legally correct, the Court need not weigh as a factor whether the plan administrator operated under a conflict of interest. *See Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). The Court notes for thoroughness, however, that ERISA authorizes employers to act as both plan sponsors and plan administrators. 29 U.S.C. § 1002(16)(A), (B). A conflict of interest may be said to exist when the plan administrator is also the payer of benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) ("Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case."). In the subject Plan, Kohler was the plan administrator and plan sponsor, but UniCare was the payer of benefits under the Plan. Thus, even if the Court had reached the two-step, abuse of discretion inquiry, conflict of interest would not have been a factor in the analysis.

$100,000-level supplemental life and accidental death and dismemberment benefits is consistent with a fair reading of the Plan. The Plan provides that an employee is required to present evidence of insurability if the employee's "coverage amount equals $50,000 or $100,000," or if the employee "increase[d] [his or her] coverage amount more than one level (i.e., from $25,000 to $100,00)." AR 00227. In the case *sub judice*, Decedent was required to present evidence of insurability because he had elected to have $100,000 coverage in supplemental life insurance coverage, and because he had elected to increase his coverage amount more than one level. The Plan makes clear that "[c]overage at the higher level will begin when the insurance company approves your application. If you cannot supply [evidence of insurability], you will not be able to obtain this optional coverage." *Id.* The Plan similarly states with respect to Class "C" employees, including Decedent: "Supplemental [i]nsurance amounts of $50,000 or $100,000 shall not become effective prior to approval of evidence of your insurability by the insurer." AR 00051. No evidence in the record supports that Decedent supplied evidence of insurability prior to his death or that UniCare had approved his application for $100,000-level coverage on his supplemental life insurance. Thus, at the time of his death, Decedent did not have $100,000 supplemental life insurance coverage, and Plaintiffs are likewise not entitled to supplemental life insurance benefits at the $100,000 level.

The Plan provides that when an employee elected to increase his insurance coverage by more than one level and/or up to the $50,000 or $100,000 level, but failed to present evidence of insurability, the employee would "be enrolled into the highest coverage level not requiring [evidence of insurability] until the life insurance company approves [the employee] for coverage" at the higher level. Thus, under the Plan, because Decedent had elected to increase his supplemental life insurance coverage to the $100,000 level, but had failed to present evidence of

9

insurability, he was enrolled in the $25,000 supplemental life insurance coverage level pending UniCare's approval of Decedent's evidence of insurability—which was never received. Because his accidental death and dismemberment insurance level could not exceed his supplemental life insurance coverage level under the Plan, Decedent was enrolled in the $25,000 accidental death and dismemberment insurance coverage level. Thus, from January 1, 2009 until the day of his death, Decedent had $25,000 coverage in supplemental life insurance and $25,000 coverage in accidental death and dismemberment insurance.[2]

The Court notes that there is also no evidence in the record that UniCare had approved the increased coverage by deducting the appropriate amounts from Decedent's paycheck to reflect a $100,000 level of benefits for both policies. The open enrollment confirmation form had indicated that Decedent's deductions would be $1.11 per payday for $100,000 supplemental life insurance coverage and $0.83 per payday for $100,000 accidental death and dismemberment coverage. Instead, the deductions taken from Decedent's paychecks reflected a $25,000 level of coverage on both policies; from the time of Decedent's first paycheck in 2009 until his last paycheck prior to his death, Deduction's deductions were $.28 per payday for $25,000 supplemental life insurance coverage and $.21 per payday for $25,000 accidental death and dismemberment coverage. AR 00136–00151. Thus, Decedent's deductions indicated his coverage level was $25,000 for both supplemental life and accidental death and dismemberment insurance.

---

[2] With respect to Plaintiffs' argument that no evidence in the record supports that Decedent received notice that evidence of insurability was required to obtain the $100,000 level of coverage, the Court finds this argument does not highlight a genuine dispute of material fact, as the Plan itself provided notice to Decedent that evidence of insurability was required to obtain the $100,000 level of supplemental life insurance coverage, and that the amount of accidental death and dismemberment insurance could not exceed the amount of supplemental life insurance.

Because the record indicates that Plaintiffs have no entitlement to benefits at the $100,000 coverage level, Defendants' decision to deny benefits to Plaintiffs at the $100,000 coverage level was appropriate.

Plaintiffs' response to Defendants' motions for summary judgment, as well as Plaintiffs' cross-motion for summary judgment, do not address Plaintiffs' other claims in the amended complaint that Defendants (1) failed to describe the policy review, appeal process, or rights of action pursuant to 29 U.S.C. § 1132, as required by 29 U.S.C. § 1133; (2) failed to provide information regarding internal appeal procedures and any documents necessary to file such an appeal in violation of 29 U.S.C. § 1132(c); (3) committed breach of contract in violation of state law when they denied entitlement to benefits at the $100,000 level; and (4) should be equitably estopped from denying the benefits to Plaintiffs under state law. Defendants hotly contest the validity of these claims in their motions for summary judgment. The Court finds that by not addressing the aforementioned claims in the response to Defendants' summary judgment motions or in the cross-summary judgment motion, Plaintiffs have abandoned these claims. Under Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Thus, no genuine dispute of material fact exists and summary judgment is proper on Plaintiffs' claims.

## D. Conclusion

In sum, Defendant Kohler Company's motion for summary judgment [36] will be GRANTED, and Defendant UniCare Life and Health Insurance Co.'s motion for summary judgment [39] will be GRANTED, as no genuine disputes of material fact exist and Defendants are entitled to judgment as a matter of law on all claims. Plaintiffs' motion for summary

judgment [41] will be DENIED. The parties' joint motion for continuance of trial setting and pending deadlines [63] will be DENIED AS MOOT.

A separate order in accordance with this opinion shall issue this day.

THIS, the 20th day of June, 2013.

/s/ Glen H. Davidson
SENIOR JUDGE